PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ARTURO DEL VALLE MILÁN, Defendant and Appellant.

No. 7269. Argued December 15, 1938.—Decided January 10, 1939.

*Leopordo Tormes García* for appellant; *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for the People of Puerto Rico, appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

Arturo del Valle Milán was convicted of a breach of the peace and sentenced by the District Court of Guayama to pay a fine of $15 and costs, or to spend one day in jail for each dollar of the fine which he did not pay.

In his appeal to this court he alleges that the lower court committed the following errors:

"1. The Court committed a serious error prejudicial to the defendant in weighing the evidence presented by the State.

"2. The Court erred in holding that the evidence presented by the District Attorney and that presented by the defendant were conflicting, when there was no conflict but on the contrary defendant's evidence merely tended to make clear facts brought forth by the witnesses of the State.

"3. The Court incurred in serious error prejudicial to defendant in permitting the witnesses of the State to testify on facts which might constitute a different manner of committing a breach of the peace and which were not alleged in the complaint.

"4. The sentence in this case is contrary to the evidence and the law."

The first, second and fourth assignments of error refer to the weighing of the evidence. We shall discuss them together.

The evidence shows that on the day in question, appellant, who was at that time an inspector of the Board of Health, seized some milk which was being sold surreptitiously in the city of Guayama. He swore out the information and turned over the milk to the Municipal Judge. After being arraigned, defendant requested the Municipal Judge to allow him to add the name of a witness for the prosecution. The conversation with said official was most cordial and at the same time defendant was very respectful towards the Judge.

By permission of the Judge, defendant added to the information the name of the witness that he had omitted and left. A short time after, someone who had an interest in the milk which had been seized by defendant, requested the Judge to return it. He did not grant this request because, according to him, the regulations of the Board of Health state that any milk which is seized shall be destroyed. He was then informed that the Board of Health stated that the return of the milk was within the judge's discretion. The judge disliked it and, addressing a group (made up of defendant and others) he asked who had said that he could return the milk, and as no one answered him, he asked defendant directly if he was the one who had said so. Defendant denied it and then the judge, in the presence of the group, spoke as follows:

". . . I will not allow any inspector of the Board of Health nor any person to interfere in the discharge of my duties as Municipal Judge. While I am judge of this court any orders that may have to be given and enforced will be given by me as Municipal Judge, because I, as Municipal Judge, am not going to allow an inspector of the Board of Health to teach me what I learned at the University of Puerto Rico. . ." (R., p. 17.)

These statements of the judge angered defendant, the blood rushed to his head, according to him, but nothing further followed, and the judge retired to his office. Three or four minutes later the judge went to the clerk's office and asked for the records of the cases, in order to decree the destruction of the milk. The clerk then informed him that defendant had said, before some women there present, that if the judge dared to return the milk he would prefer charges against him before the Attorney General. When the judge heard this, he went out into the street without his coat and, catching sight of defendant, who was standing beside a motorcycle about twenty feet from the court, he called him and when he arrived at the clerk's office, in the presence of the

latter, of the marshal and of some women who were present, a scene took place which the judge describes as follows:

". . . Mr. del Valle arrived and I said him: 'You heard, you heard me decide this case against these gentlemen's petition; after this was definitely decided you stated here that if I returned the milk you would prefer charges against me. Why do you do this?' Then in a violent manner he backed up and stated: 'I said it and I will sustain it, and don't come yelling at me; you are used to yelling at everybody here in Guayama, but you are not going to yell at me, because I am not from Guayama.' I said: 'Please get out; you are brazen.' He said: 'I will not get out. I am filing some informations.' I said: 'You filed them a long time ago.' He said: 'I am not going, put me out if you can.' He backed up a few steps, he placed his hand violently on the place where he carried his revolver, almost drawing it, at the same time gesticulating and saying in a violent tone of voice: 'The trouble with you is that you are a show-off. I am going to break your face in two.' I said: 'Please get out of here. I am the judge here.' He said: 'Come *on out* to the street. I am going to break your face.' I said: 'Call an officer.' I was not armed, but in the room, behind me, was the marshal of the court, who, when he saw his movement to draw his revolver, when the marshal saw that he placed his hand on his holster, the marshal placed his hand also on his holster and then he said: 'Don't draw that revolver.' The marshal said: 'I am not going to draw it, but leave yours alone because you are in court.' He put his revolver in his pocket. The marshal did not have to draw his and he said to him: 'Are you going, or are you going to stay?''

"\*     \*     \*     \*     \*     \*     \*

"While I was saying: 'Do me a favor, get out of here, are you going to stay at the court?,' he backed up in front of me, saying: 'You are a show-off; I am going to break your face; come on out on the street and I will break your face.' At this moment officer Colón arrived at the door, where he stood, and I told him: 'Get this man out of here.' Again he walked, as far as the door, saying: 'Come on out, here we will be on equal footing, we won't be in court.' And I said: 'Officer, get this man out of here.' He said: 'Get a car and let's go out on the road.' All this he said in a violent manner, in a loud voice, about 18 or 20 persons had come together in the street. I said: 'I am going to file information against you right away and I am going to have you arrested immediately.' He

ran, not exactly ran, but walked very fast toward the corner and went away."

We do not have the slightest doubt that the impulsive manner of the judge was the cause of the disagreeable incident. The fact that defendant did not agree with him as to his authority to return the milk was not sufficient motive for him to become angry and say what he did. He himself testified that when he spoke these words defendant became very angry and nervous, as could clearly be seen from his face and gestures, but this provocation by the judge does not relieve defendant of responsibility. This is not a case of a breach of the peace by fighting, in which the doctrine of self-defense is applicable. A person who is attacked by another and does not use more force than is necessary to repel the attack is not guilty of a crime, even though due to the fight a breach of the peace is committed. *People* v. *Torres,* 18 P.R.R. 897, and *People* v. *Franquis,* 24 P.R.R. 575.

When a breach of the peace is committed by affronts, insults, challenges, etc., the person to whom these are made does not have a right to answer with other affronts or insults; the only thing that he can do is to bring the case to the notice of the courts and not incur in a similar offense.

In regard to this Corpus Juris says:

"It is no defense that opprobious words, the use of which tended to provoke a breach of the peace, were true; that defendant's wife informed him that the person addressed had insulted her, where he had not in fact done so; *that the prosecuting witness provoked the obusive language by abusing defendant,* . . .; or that prosecutor was at the same time guilty of the same offense." 9 C. J. 389, and cases cited.

Therefore, the aforesaid conduct of the judge did not justify the defendant in committing a breach of the peace against the former, the Clerk and the aforementioned women. Assuming that the judge had also committed a breach of the peace, the only right of appellant was to bring an information against him.

46

■■ Let us now consider the third assignment of error. It reads as follows:

"The Court incurred in serious error prejudicial to defendant in permitting the witnesses of the State to give evidence of facts which might constitute a different manner of committing a breach of the peace and which were not alleged in the complaint."

One of the forms of the offense of breach of the peace as it is defined by Section 368 of the Penal Code consists of "challenges and affronts". In this case defendant not only used language offensive to the judge but he also challenged him to fight. He invited him to come out into the street and even made a movement to withdraw his revolver. The evidence in regard to the challenge and the threats was clearly admissible, as it was alleged in the complaint and therefore the defendant cannot allege surprise, but it has also been constantly upheld by the decisions that the different forms set forth in a statute constitute but one offense—breach of the peace. 9 Corpus Juris 389 and cases cited.

The judge of the lower court did not commit error in admitting the evidence of the alleged challenges and affronts, and in basing his judgment on this form of the offense he did not deprive defendant of any of his rights.

Therefore, the judgment appealed from should be affirmed.

Mr. Chief Justice Del Toro took no part in the decision of this case.